UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


CESAR CARDENAS PULIDO,                                    Civ. No.: 03:15-CV-01992-AC

                                    Plaintiff,                      FINDINGS AND
                                                                RECOMMENDATION

                v.

WALTER MONK, JOHN DOES 1-10, and
UNITED STATES OF AMERICA


                        Defendants.

_____

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Ceasar Cardenas Pulido ("Pulido") filed this lawsuit seeking economic and non-

economic damages against Drug Enforcement Administration ("DEA") Task Force Officer ("TFO")

Walter Monk ("Monk") and John Does 1-10 (collectively, "the investigators") in their individual

capacities, and the United States ("United States"), alleging a violation of his constitutional and

common-law rights.  Pulido's claims arise from the investigators misidentifying him as a member

PAGE 1 - FINDINGS AND RECOMMENDATION                                              {LS}

of a drug gang, leading to his arrest.

Pulido brought this action pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971), 42 U.S.C. §1983, and under state-law theories of negligence and false imprisonment. Presently before the court are two separate motions to dismiss filed by the United States and Monk. Both defendants move to dismiss for failure to state a claim under Federal Rule of Civil Procedure ("Rule") 12(b)(6). United States also moves to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).

Because the discretionary function exception ("DFE") of the Federal Tort Claims Act ("FTCA") applies to the negligence claim, but not the false imprisonment claim against the United States, the United States' motion should be granted, but Pulido should be given leave to amend his false imprisonment claim to provide more specificity to support the allegation that Monk knew or should have known that Pulido was not "Bolsitas." Pulido also fails to adequately allege a *Bivens* claim, and is not entitled to a claim under 42 U.S.C. §1983. Therefore, Monk's motion should be granted and Pulido should be given leave to amend his *Bivens* claim to provide more specificity of how Monk violated his constitutional rights.

*Background*

The Second Amended Complaint ("complaint") alleges the following facts.

On October 24, 2013 Pulido was arrested pursuant to an arrest warrant for "CESAR CARDENAS-PULIDO a/k/a Bolsitas." (Second Am. Compl. ¶ 26, ECF No. 27.) Pulido's arrest was a result of an investigation beginning in 2008, conducted by the investigators for an alleged conspiracy to distribute methamphetamine and heroin throughout the United States. (*Id.* ¶ 6.) Monk is a Sheriff's Deputy employed by the Washington County Sheriff's Office, and, during the relevant

events, was assigned as a TFO for the DEA in the Portland District Office.  (*Id.* ¶ 4.)  One key part of the investigation was an interview conducted by Monk and two other individuals on June 8, 2011 of Richard Delgado.  (*Id.* ¶ 7.)  During this interview the interviewers showed Mr. Delgado a photograph of two subjects of the investigation.  (*Id.*)  He identified these subjects as "Hugo Gonzalez-Pasaye" and "Bolsitas."  (*Id.*)  "Bolsitas," Mr. Delgado believed, sold drugs for Gonzalez-Pasaye.  (*Id.*)  Based on this information, on September 17, 2011, Monk signed an Affidavit in support of an application for interception of wire communications. (*Id.* ¶ 8.)

From October 25, 2011, until the grand jury indictment of Pulido about a month later, the DEA intercepted numerous calls.  ( *Id.* ¶ ¶ 10-15, 17.)  Some of these calls identified the alias "Bolsitas" as "Ceasar Cardenas," others identified it with a different name.  (*Id.*).  Two of the transcripts prepared by the DEA describe one of the participants as "CESAR CARDENAS PULIDO A.K.A. BOLSITAS A.K.A. JUAN [BOLSITAS]."  (*Id.* ¶¶ 12, 15.)  Other summaries describe one of the participants as "BOLSITAS [JUAN]."  (*Id.* ¶ 13.)

On November 18, 2011, Monk signed an affidavit in support of application for interception of wire and electronic communications.  (*Id.* ¶ 16.)  This affidavit states that subject Juan aka "Bolsitas" is a drug source supply for Hugo Gonzalez-Pasaye.  (*Id*.)  It also summarizes Monk's description of  "Cesar CARDENAS-Pulido aka 'Bolsitas'" which includes:  Pulido is a Hispanic male (DOB 12/21/1998), his driver's licence lists a Portland, Oregon address, and subject Meno identified "Bolsitas" as Pulido in a telephone conversation with an unidentified male.  (*Id.*)  Monk also identifies Pulido and "Bolsitas" as the same person, stating "Msgt. Sewell found an Oregon DMV photo in the name of Cesar CARDENAS-Pulido.  I have viewed both photographs and know that the individual identified as Subject Cardenas-Pulido in the Oregon DMV photo is the same

individual Subject DELGADO identified as Bolsitas." (*Id.*)

Based on the investigation and identifying information complied by the investigators, a grand jury issued an indictment against Pulido for conspiracy to distribute methamphetamine. (*Id.* ¶ 19.) Subsequently, an arrest warrant was issued for Pulido a/k/a "Bolsitas." (*Id*. ¶ 20.) Pulido was not arrested immediately because he could not be located until nearly two years later, when the United States Marshals Service arrested Pulido in El Paso, Texas. (*Id.* ¶ 26.)

The following March, Pulido's attorney, David Audet ("Audet"), emailed Assistant United States Attorney Geoffrey Barrow requesting the photograph shown to Delgado in the June 2011 interview identifying "Bolsitas", which was promptly sent. (*Id.* ¶ 29.) Six months later, Audet submitted a letter to Assistant United States Attorney John Laing detailing the reasons Pulido was not "Bolsitas." (*Id.* ¶ 30.) The Court granted a Motion to Dismiss the indictment against Pulido a week later, on the basis that questions were raised as to his identity. (*Id.* ¶ 31-32.)

Pulido contends the investigators were "deliberately indifferent to evidence that plaintiff was not 'Bolsitas,' and they knew or were deliberately indifferent to the fact or otherwise should have known that plaintiff. . . was not 'Bolsitas.'" (*Id.* ¶ 25.) The investigators made this misidentification with intentional or deliberate indifference to Pulido's constitutional rights, causing him severe physical and emotional distress. (*Id.* ¶¶ 25, 36,43,48.) Pulido asserts that no reasonable officer could find the surveillance photo of "Bolsitas" Monk relied on matches Pulido's DMV photograph, and that Monk failed to locate readily available information showing Pulido traveled from Oregon to Mexico to apply for an immigrant visa at the United States Consulate in September 2011. Pulido also alleges he was subjected to criminal charges based on fabricated evidence. (*Id.* ¶¶ 22, 24, 42.)

Defendants Monk and the United States filed two separate motions to dismiss.  The United States argues that the suit against it should be dismissed for two reasons:  1) the suit is jurisdictionally barred under the DFE of the FTCA because law enforcement has discretion in how to conduct a criminal investigation; and 2) Pulido fails to state a claim upon which relief can be granted because probable cause supported his arrest.  Monk asserts he should be dismissed from the case because he is not subject to suit under 42 U.S.C. §1983, as he acted under the authority of the federal government as a member of the DEA task force. Monk also contends the court should not apply a *Bivens* remedy because an alternative process and special factors exists that are designed to protect constitutional interest.  However, even if a *Bivens* claim does apply, he is entitled to qualified immunity from a *Bivens* claim.

*Preliminary Procedural Matters*

To support the motion to dismiss, Monk provides extrinsic evidence including the photographs referenced in the complaint.  The photographs depict Pulido's driver's license photograph (Def. Monk's Ex. B) and the surveillance photograph of Hugo Gonzalez-Pasaye and "Bolsitas" (Def. Monk's Ex. C).  Pulido does not object or contest the authenticity of these photos.

In general, material outside the pleadings may not be considered in ruling on a motion to dismiss.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, the "incorporation by reference" doctrine allows the court to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999)).  This doctrine extends to "situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the

document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998)).  *See also Curran v. Amazon.com, Inc.*, No. CIV.A. 2:07 0354, 2008 WL 472433, at *14 (S.D. W.Va. Feb. 19, 2008) (citing *Phillips v. LCI Int'l, Inc.*, 190 F3d 609, 618 (4th Cir. 1999)) (holding authenticity bars the consideration of documents only if plaintiff challenges it.)

The photographs Monk provides are incorporated by reference in the complaint and Pulido's claims rely on them, and may be considered for purposes of Monk's motion to dismiss.  The United States' motion also discusses these photographs, and the court also will consider them in analyzing the United States' motion to dismiss.

*Legal Standards*

I. Motion to Dismiss Under Rule 12(b)(6).

To state a claim, plaintiff's complaint must contain sufficient factual allegations which, when accepted as true, give rise to a plausible inference that relief is warranted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009);  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 556–57 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at 678;  *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.2009).

The Ninth Circuit elaborated on the *Twombly-Iqbal* standard in *Moss*, by reaffirming the *Iqbal* holding that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  72 F.3d 969 (9th Cir. 2009).  The court in *Moss* concluded by stating: "In sum, for a complaint to

survive a motion to dismiss, the non-conclusory factual content, and reasonable inference from that content must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id.* at 969.

On a motion to dismiss for failure to state a claim, the court must take as true all allegations of material fact, construing them in the light most favorable to the nonmoving party. *Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002). The court's review is limited to the face of the complaint, any documents referenced in the complaint, and those matters of which the court may properly take judicial notice. *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). Otherwise, as a general matter, a district court may not consider any material outside of the pleadings when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (9th Cir. 2001). If matters outside the pleadings are considered, the motion shall be treated as one for summary judgment. FED. R. CIV. P. 12(d).

II. Motion to Dismiss Under Rule 12(b)(1).

A motion to dismiss for lack of jurisdiction under Rule 12(b)(1) "is not confined to the four corners of the complaint – it may consider facts and need not assume the truthfulness of the complaint." *Americopters, LLC v. F.A.A.*, 441 F.3d 726 n.4 (9th Cir. 2006); *see Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016). Indeed, a motion to dismiss lack of jurisdiction under Rule 12(b)(1) may be either facial or factual. In resolving a "facial" attack, the court limits its inquiry to the face of the complaint, accepting the plaintiff's allegations as true. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004), cert. denied, 544 U.S. 1018 (2005). In a "factual" attack, however, the court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Green v. United States*, 630 F.3d 1245, 1248 n.1 (9th Cir, 2011); *Safe Air*, 373 F.3d at 1039.

*Discussion*

## I. Negligence and False Imprisonment Claims Against the United States

Pulido asserts a cause of action for the tort of negligence and false imprisonment against the United States. The United States moves to dismiss these claims under Rule 12(b)(1) and Rule 12(b)(6), arguing that Pulido's claims are jurisdictionally barred by the DFE under the FTCA, and that Pulido has failed to state a claim upon which relief can be granted. For the reasons stated below the court should grant the United States' motion to dismiss Pulido's negligence claim and Pulido's false imprisonment claim, but grant leave to Pulido to amend his false imprisonment claim to provide more specificity to support the allegation that Monk knew or should have known that Pulido was not "Bolsitas."

*A . The Federal Tort Claims Act and the Discretionary Function Exception.*

The FTCA gives the court subject matter jurisdiction over certain claims against the United States for injuries caused by the negligent or wrongful acts and omissions of government employees acting within their scope of employment. 28 U.S.C. §1346(b)(2). Jurisdiction over these claims is limited to circumstances where "a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* Thus, the United States is liable for tort claims under the FTCA "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. §2674. The United States' liability under the FTCA is based solely on the liability of a private party under local law. *United States v. Olson*, 546 U.S. 43, 126 S. Ct. 510 (2005).

The FTCA retains United States' sovereign immunity for "any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander,

PAGE 8 - FINDINGS AND RECOMMENDATION                                              {LS}

misrepresentation, deceit, or interference with contract rights." 28 U.S.C. § 2680(h). But, the FTCA waives the United States' sovereign immunity for claims arising out of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" committed by a federal law enforcement officer. *Id*.

Notably, the FTCA will not apply when employees have discretion to decide how to carry out their tasks. 28 U.S.C. §1346(b)(1); 26 U.S.C. § 2680(a). Congress authorized this special grant of immunity, known as the discretionary function exception, or the DFE, to prevent "judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

The analysis of whether the DFE shields an employee's actions takes a two-prong approach. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). First, the court asks whether the conduct involves an element of judgment or choice. *Id*. Where statutes, regulations, or policies specifically prescribe a course of conduct for the employee, the employee exercises no judgment in how to carry out her duties; therefore, the DFE cannot apply. *Id*.

If the court determines the first prong does not preclude application of the DFE, it then considers "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id*. at 536. Courts generally shield judgments falling under the rubric of "social, economic, or political policy." *Id*. Government employee decisions must be "susceptible to policy analysis" to qualify for the exception, that is, grounded in the policy of the agency's regulatory regime, even though not prescribed by the agency's policies. *Id*. If the challenged action or omission satisfies both prongs of the *Berkovitz* test, the government is not liable for the

employee's actions, even if the employees' actions were negligent, constituted an abuse of discretion, or were the wrong choice under the circumstances. *Terbush v. United States*, 516 F.3d 1125, 1129 (9th Cir. 2008).

Investigation and prosecution of crimes is a matter of agency discretion subject to the DFE. *Gonzalez v. United States*, 814 F.3d 1022, 1028 (9th Cir. 2016). In *Gonzalez*, the court held that the DFE protected the FBI's investigation because "they [the FBI] must consider the source of the information, its credibility, and the amount of detail in the information. FBI agents, like detectives and police officers, must evaluate whether the information requires immediate action, deferred action, or no action at all." *Id*. at 1029. Under the policy analysis of the DFE, investigation of a crime involves policy judgments, and the investigator must "consider the reliability of the information, the relative importance of the crime, and the agency's mission and resources." *Id*. at 1032. Thus, the DFE protects a government employee from liability based on their decision how to approach an investigation.

        B.      *Negligence Claim Against United States*.

Pulido's complaint asserts Monk acted negligently in not pursuing other names associated with the alias, that he acted unreasonably when comparing the sufficient differences between "Bolsitas" and Pulido's DMV photograph, and that he did not locate readily available information that Pulido was in Mexico in September 2011, the time the surveillance video of "Bolsitas" was taken. United States argues that this activity is protected under the DFE because it is investigative activity.

*Gonzalez* held investigation and prosecution of a crime is a matter of agency discretion subject to the DFE. 814 F.3d at 1028. Indeed, Pulido's claim for negligence that Monk "did not act

as a reasonable officer would" during the investigation attacks Monk's decisions to pursue leads and what information to gather.  Pulido's allegations that Monk "unreasonably" concluded the photograph of the surviellence video matched Pulido's DMV photograph, did not pursue other leads, and did not locate identifying information fall under the umbrella of investigative activity.  Because the DFE applies to the investigatory decision-making at issue here, the court lacks subject matter jurisdiction over Pulido's negligence claim against United States.  Accordingly, the United States' motion to dismiss Pulido's negligence claim should be granted.

C.     *False Imprisonment/False Arrest Claim Against United States.*

Pulido asserts a cause of action for the tort of false imprisonment[1] based on the same facts used to support his negligence claim.  The United States argues this claim also is covered under the DFE.  In the alternative, the United States asserts Pulido has not plausibly alleged a wrongful act by law enforcement that caused the unjustified imprisonment.  Because the FTCA specifically waives sovereign immunity for false arrest and false imprisonment claims by federal law enforcement officers, the DFE does not apply and the court should deny the United States' motion to dismiss for lack of subject matter jurisdiction.

The United States also moves to dismiss under rule 12(b)(6) for failure to state a claim under two theories: 1) the United States had probable cause to arrest Pulido, and did so under a valid arrest warrant, and 2) the prosecutor's decision to pursue criminal charges against Pulido was an intervening exercise of discretion that broke the chain of causation.  Pulido responds that the investigators provided misleading information in the investigation presented to the grand jury,

---

[1] The torts of false imprisonment and false arrest are indistinguishable. *Hiber v. Creditors Collection Serv. of Lincoln County, Inc.*, 154 Or. App. 408, 413 (1998).

leading to Pulido's arrest.

The tort of false arrest contains four elements: (1) defendant must confine plaintiff; (2) defendant must intend to accomplish the act that causes confinement; (3) plaintiff must be aware of the confinement; and (4) the confinement must be unlawful. *Ross v. City of Eugene*, 151 Or. App. 656, 663 (1997) (citing *Lukas v. J.C. Penney Co.*, 233 Or. 345, 353 (1963); *Walker v. City of Portland*, 71 Or. App. 693, 697 (1985). The elements of false imprisonment are generally considered factual issues, to be resolved by the trier of fact. *Ross*, 151 Or. App. at 663 (citing *O'Brien v. Eugene Chemical*, 63 Or. App. 284, 288 (1983)).

Courts use a special approach termed "objective reasonableness" in cases involving an arrest based on misleading information. *Malley v. Briggs*. 475 U.S. 335 (1986). Under the "objective reasonableness test" an officer must have an objectively reasonable basis for believing that the facts alleged in his affidavit are sufficient to establishing probable cause. *Id*. at 339. The test ensures that officers will reflect on applications and avoid premature requests. *Id*. at 343.

Because this case involves an allegation of an arrest warrant predicated on misleading information, the court looks to the standard in *Malley*. That is, whether Pulido has plausibly alleged that Monk did not have an objectively reasonable basis for believing the facts alleged in his affidavit are sufficient to establish probable cause.

Viewing the allegations contained in the complaint as true, Pulido does not sufficiently state a claim for false imprisonment that is plausible on its face. Pulido asserts that the investigators "knew or were deliberately indifferent" to the fact that Pulido was not "Bolsitas." (Second Am. Compl. ¶ 26, ECF No. 27.) Specifically, Pulido's complaint alleges that: 1) Monk compared the DMV photograph of Pulido and the surveillance photograph of Bolsitas and concluded it was the

same person; 2) the two photographs had significant physical differences; and 3) a reasonable officer would not have concluded that the DMV and surveillance photographs are the same person. Pulido was wrongly incarcerated for nearly a year because of the investigators' actions.

Because the photographs are part of Pulido's complaint, the court must consider them along with the complaints written allegations. On a motion to dismiss for failure to state a claim, the court usually takes as true all allegations of material fact, *Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002) but, the court need not accept allegations as true if contradicted by documents attached to the complaint. *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 112, 1115 (9th Cir. 2014) (collecting cases), *cert. den.* 135 S. Ct. 2313 (2015).

Here, the photographs Pulido references and Monk provides undermine rather than underscore the allegations in the complaint that no reasonable officer would have concluded the photos were of the same man. Specifically, a key assertion in Pulido's complaint is "no reasonable officer could find the surveillance photo of "Bolsitas" Monk relied on matches Pulido's DMV photograph." (Second Am. Compl. ¶¶ 22, 25.) The court disagrees that the photographs, without more context, support this allegation. Therefore, based on the information in the complaint, Monk fails to state a claim of false imprisonment, but should be allowed to amend the complaint to provide additional facts to support this allegation.

Next, the United States argues that the investigators' actions were not the legal cause of Pulido's damages, and instead his arrest and prosecution resulted from the independent actions of the prosecutor. The United States Supreme Court rejected a similar argument in *Malley*, which involved submission of arrest warrants and supporting affidavits by a state trooper to a state judge, who signed the warrants. *Malley*, 475 U.S. at 335 The police arrested plaintiffs, but released them

PAGE 13 - FINDINGS AND RECOMMENDATION                                          {LS}

shortly thereafter because the grand jury did not return an indictment. *Id.* On appeal, the Supreme Court found the judge did not break the causal chain of causation when issuing the arrest warrant, and an officer seeking an arrest warrant may be liable to a plaintiff for injuries suffered from an arrest. *Id.* at 339-43. *See also Stone v. Finnerty,* 182 Or. App. 452 (2002) (stating that an individual can be liable for instigating imprisonment of another person falsely, even if the person does not participate physically or directly in the confinement.)

In *Pearson v. Galvin*, 253 Or. 331 (1969), the Oregon Supreme Court considered the causal effect of an arrest based on misrepresentation. The court determined that, "If pertinent information is withheld or there are misrepresentations made as to the facts, or undue influence brought to bear, there can be no intelligent exercise of the officer's discretion, and the person thus procuring the action of the officer is not insulated from responsibility." *Id*. at 337. A person may instigate a false arrest with "words or acts which direct, request, invite or encourage the false imprisonment itself." *Id*. at 334. The plaintiff need not prove the defendant "was the sole, or exclusive, instigator of his arrest, but that the defendant participated by taking an active part in bringing about the arrest." *Id*. at 337.

In light of *Malley* and *Pearson*, the court finds Pulido sufficiently states a causal relationship between the investigator's actions and Pulido's damage. Similar to *Malley,* where the officer seeking an arrest warrant by submitting a complaint could be liable to a plaintiff for injuries suffered from an arrest, Pulido alleges that Monk conducted an investigation and submitted an affidavit stating with certainty that Pulido is the same individual Delgado identified as "Bolsitas." Pulido asserts this identification was made knowingly or with deliberate indifference to the fact that Pulido was not "Bolsitas." Taking these allegations as true, and viewing them in a light most favorable to the

PAGE 14 - FINDINGS AND RECOMMENDATION                                    {LS}

plaintiff, the court could draw the reasonable inference that Monk knowingly made false statements, which would foreseeably result in a false imprisonment.

II. 42 U.S.C. §1983 and *Bivens* Claims Against Monk.

        Pulido seeks relief against the investigators in their personal capacity under 42 U.S.C. §1983 and *Bivens*, alleging that they deprived Pulido of rights secured to him under the Fourth, Fifth and Fourteenth Amendments.  Monk argues these motions should be dismissed because: 1) he is not liable under 42 U.S.C. §1983 because he was cloaked in the authority of the federal government, 2) a *Bivens* remedy is inappropriate in this context, and, 3) even if a *Bivens* remedy is appropriate, Monk is entitled to qualified immunity.

        *A.*      *42 U.S.C. §1983 and Bivens.*

        42 U.S.C. § 1983 provides a cause of action for constitutional violations against officials acting under the color of state law, whereas *Bivens* provides a cause of action against officials acting under the color of federal law.  *See Bivens*, 403 U.S. at 389.  The elements of liability in the two claims are otherwise same.  *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991).

        Pulido asserts a claim under both 42 U.S.C. §1983 and *Bivens* alleging constitutional violations of his rights.  The parties disagree on the standard to apply.  Monk claims as a DEA TFO, he acted under the authority of a federal agency and is not subject to suit under 42 U.S.C. §1983. Pulido argues Monk is liable under both 42 U.S.C. §1983 and *Bivens* because he was acting under the color of state law as a Washington County Sheriff's Deputy assigned to a DEA TFO, where he was performing duties by virtue of his temporary federal status.  The Court finds only a *Bivens* analysis is appropriate because Monk was acting under the color of federal law at the time of the relevant events.

PAGE 15 - FINDINGS AND RECOMMENDATION                         {LS}

The California district court considered the identical legal issue of whether local law enforcement acting as a DEA TFO falls under 42 U.S.C. §1983 or *Bivens*. *Gaspard v. DEA Task Force*, Case No. EDCV 15-01802-BRO (KES), 2016 WL 2586182, at *7 (C.D. Cal. Apr. 4, 2016), *report and recommendation adopted*, 2016 WL 2349093 (C.D. Cal. May 4, 2016)(citing *Bivens*, 403 U.S. 388). In *Gaspard*, the court recognized state and local law enforcement officers deputized as DEA TFOs under 21 U.S.C. § 878(b) are not subject to provisions of law relating to federal employees with the exception of 5 U.S.C. §3374, which provides "local government employees on detail to a federal agency are deemed employees of the agency for purposes of 'the Federal Tort Claims Act and any other Federal tort liability statute." *Gaspard*, 2016 WL 2586182, at *7 (quoting 5 U.S.C. § 3374(c)(2)). It then acknowledged a split of authority on the interpretation of these statutory provisions on the issue of under which law – state or federal – local law enforcement officers act while deputized as a DEA TFO. *Id*. The court followed the weight of authority and found local law enforcement agents deputized as part of a federal task force should be treated as federal agents, and therefore *Bivens* is applicable. *Id*. (collecting cases).

The parties do not dispute that Monk was acting as a DEA TFO during the relevant investigation. Thus, Monk is subject to suit under *Bivens*, not 42 U.S.C. §1983.

B.    *Bivens Claim*.

Pursuant to *Bivens*, Pulido alleges the investigators violated his Fourth and Fifth Amendment rights they when intentionally or with deliberate indifference made false statements or omissions that were material to the finding of probable cause by the grand jury, and subjected him to criminal charges premised on fabricated evidence. Monk responds that the court should decline to apply a *Bivens* remedy and, even if *Bivens* does apply, Monk is entitled to qualified immunity.

1.    Viability of *Bivens* Claim.

Monk contends that the court should decline to imply the *Bivens* remedy because the Federal Rules of Criminal Procedure sufficiently protect the interests involved in this case, and grand jury secrecy is a special factor counseling hesitation in implying a *Bivens* remedy.  The Supreme Court recognizes a private right of action for money damages against federal officials that have violated a citizen's Fourth Amendment rights, despite the absence of any federal statute creating liability. *Bivens*, 403 U.S. 388.  In *Bivens*, the plaintiff alleged the Federal Bureau of Narcotics did not have probable cause when it used unreasonable force to search his home and arrest him, causing him great humiliation, embarrassment, and mental suffering. *Id.* at 390.  Plaintiff could recover money damages for any injuries suffered as a result of the agents' violation of the Fourth Amendment. *Id.* at 397.

The Supreme Court supported its decision, explaining "'it is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such an invasion, federal courts may use any available remedy to make good the wrong done'" *Id.* at 396 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).  "The very essence of civil liberty consists in the right of every individual to claim the protection of the laws, whenever he receives an injury." *Id*. at 397 (quoting *Marbury v. Madison*, 1 Cranch, 137, 163 (1803)).  In addition, there are "no special factors counseling hesitation" and "no explicit congressional declaration that persons injured by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents." *Id*. at 397.

The purpose of *Bivens* is to "deter individual federal officers from committing constitutional violations." *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 69 (2001).  Such a cause of action will not

exist where the defendant establishes that "Congress has provided an alternative remedy which is explicitly declared to be a substitute for recovery directly under the Constitution and viewed equally effective" or there are "special factors counseling hesitation in the absence of an affirmative action by Congress." *Carlson v. Green*, 446 U.S. 14, 18-19 (1980)(citing *Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228, 245-47 (1979)).

In *Wilson-Sauls v. Curtis*, this court previously denied summary judgment in a *Bivens* action alleging a Fourth and Fifth Amendment claim. No. CIV. 07-163-AS, 2008 WL 836417 (D. Or. Mar. 26, 2008). Plaintiff claimed defendants violated her constitutional rights by affirmatively permitting her coworker, Holloman, to continue to work at her company, despite knowing he was a risk. *Id*. Holloman eventually injured plaintiff by driving over her in a company security patrol vehicle. *Id*. The court found Bivens applied because the potential alternative remedy under the Federal Employees Compensation Act (FECA) did not provide for a both a jury trial and punitive damages (as available under *Bivens*). *Id*. at *11 (citing *Carlson v. Green*, 446 U.S. 14, 21-23 (1980); *accord Nurse v. United States*, 226 F.3d 996, 1005 (9th Cir. 2000)). Further, plaintiff's constitutional claims could not be "adequately redressed under FECA because it restricted her recoverable damages and the accountability of the defendants." *Id*.

Here, Pulido alleges Monk violated his rights under the Fourth and Fifth Amendments. The Fourth and Fifth Amendments, respectively, guarantee "'[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, and the right not to be deprived of property without "due process of law.'" *Id*. at *8. Indeed, submitting false and material information in a warrant affidavit may make a government investigator liable for a Fourth Amendment violation. *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)(citing cases).

Thus, Pulido is relying on well-established precedent that a plaintiff may recover damages if a federal employee violates his Fourth Amendment rights.

However, the court finds Pulido's complaint has not provided sufficient factual allegations supporting his claims that Monk violated his constitutional rights, for the same reason he has not adequately alleged a false imprisonment claim. The photographs Monk provides do not support the statement "no reasonable officer could find the surveillance photo of 'Bolsitas' Monk relied on matches Pulido's DMV photograph." (Second Am. Compl. ¶¶ 22, 25.) Therefore, Pulido's *Bivens* claim should be denied with leave to amend.

Additionally, Monk argues that under the "special factors" analysis, the court should decline to imply a *Bivens* remedy in this case to preserve grand jury secrecy. Although the court finds Pulido's *Bivens* claim is not sufficiently pleaded, it will note that a special-factors analysis is appropriate when a plaintiff seeks to establish a novel *Bivens* remedy. Pulido does not ask the court to do so. Allowing Pulido to pursue a *Bivens* claim based on his constitutional violation allegations would not create new federal litigation, but only allow access to " both a jury trial and punitive damages," not provided under the Federal Rules of Criminal Procedure.

       2.     Qualified Immunity.

Lastly, Monk asserts he is entitled to qualified immunity on Pulido's Fourth and Fifth Amendment claims. Because Pulido does not provide sufficient facts alleging how these constitutional rights were violated, the court will not address the issue of qualified immunity at this time.

### III. Leave to Amend.

The Ninth Circuit has repeatedly held that dismissal without leave to amend is improper,

even if no request to amend the pleading was made, unless it is clear that the defective pleading cannot possibly be cured by the allegation of additional facts. *Snell v. Cleveland, Inc.*, 316 F.3d 822, 828 n.6 (9th Cir. 2002)(citing *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001)); *Lopez v. Smith*, 203 F.3d 1122, 1130-31 (9th Cir. 2000). In this case, the court finds the photographs, without more context, do not support the allegation that "no reasonable officer could find the surveillance photo of 'Bolsitas' Monk relied on matches Pulido's DMV photograph." (Second Am. Compl. ¶¶ 22, 25.) Consequently, Pulido should be granted leave to amend to provide more specific information to allege a plausible false imprisonment and *Bivens* claim.

## Conclusion

For the reasons stated above, both the United States' motion and Monk's motion should be GRANTED with leave to Pulido to amend his complaint.

## Scheduling Order

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **November 4, 2016**. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 18th day of October, 2016.


_____/s/ John V. Acosta_____
            JOHN V. ACOSTA
      United States Magistrate Judge